IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WHITNEY B. MESSERSMITH,<br>    Plaintiff | : | No. 1:25-cv-00726 |
| v. | : | (Judge Kane) |
| CATIC TITLE INSURANCE<br>COMPANY,<br>    Defendant | : | |

## MEMORANDUM

Before the Court is a motion seeking dismissal of Plaintiff Whitney B. Messersmith ("Plaintiff")'s complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendant CATIC Title Insurance Company ("Defendant" or "CATIC"). (Doc. No. 4.) Also before the Court is Plaintiff's motion to remand the above-captioned action to the York County Court of Common Pleas on the basis that Defendant's removal to this Court pursuant to 28 U.S.C. § 1441(b) was improper. (Doc. No. 7.) For the following reasons, the Court will deny Plaintiff's motion to remand and grant Defendant's motion to dismiss.

## I.   BACKGROUND[1]

On or about March 15, 2024, Plaintiff purchased a property with a street address of 332 Old York Road, New Cumberland, PA 17070 (the "Messersmith Property") for $70,000.00. (Doc. No. 1-1 at 5, 12.) Plaintiff purchased a title insurance policy from Defendant, insuring the title to the newly purchased property. (Id. at 4–10.) The title insurance policy insures title to the land described as "York County Parcel ID No. 27-000-RF-0029.A0-00000, the same being

---

[1] Unless otherwise stated, all factual allegations are taken from Plaintiff's complaint. For purposes of Defendant's pending motion to dismiss, the court accepts all allegations as true. See Kedra v. Schroeter, 876 F.3d 424, 434 (3d Cir. (2017).

known as 332 Old York Road" and names Plaintiff as the insured. (Doc. No. 1-1 at 5.) Plaintiff believed that she was purchasing the land described as "York County Parcel ID No. 27-000-RF-0029.A0-00000" and a residential structure that she believed was located on the described parcel of land. (Id.) However, Plaintiff did not survey the land she purchased before purchasing the title insurance policy or closing on the sale. (Id. at 5–6.)

In late May or early June of 2024, Plaintiff was notified by her neighbor, Mr. Seaks, that the house she was living in at 332 Old York Road was actually located on his property (the "Seaks Property"). (Id.) Upon this revelation, Plaintiff filed a policy claim with Defendant. (Id. at 6.) Plaintiff was instructed by Defendant to obtain a survey of the land, and the survey revealed that the home was entirely located on the Seaks Property. (Id.)

Plaintiff also received an abstract of the title to the Seaks property ("Seaks abstract"). (Id.) The Seaks abstract revealed a 1977 deed that conveyed two tracts of land to Douglas D. Hicks and Charlene R. Hicks. (Id. at 7.) Those two tracts of land are now the Messersmith Property and Seaks Property. (Id. at 7.) The deed reveals that the two properties were under common ownership, and it records that the house is located on the Seaks Property. (Id.) On November 18, 2024, CATIC sent an email to Plaintiff stating that CATIC would be dispatching a formal denial of the claim to Ms. Messersmith. (Id. at 8.)

On March 27, 2025, Plaintiff filed a complaint in the Court of Common Pleas for York County, Pennsylvania, alleging one claim for breach of contract, an alternative claim for unjust enrichment, and an alternative claim for negligence against CATIC. (Id. at 8–10.) Plaintiff claims that the title defect is a covered risk under the title insurance policy she bought from Defendant; therefore, Defendant's refusal to cover the claim constitutes a breach of contract. (Id.) As an alternative claim, Plaintiff alleges unjust enrichment, asserting that it would be unjust

2

enrichment for Defendant to obtain the benefit of a $929.59 premium that Plaintiff paid without fulfilling the contractual obligations of the policy. (Id.) Finally, as an alternative claim, Plaintiff alleges negligence. (Id.) Plaintiff asserts that Defendant owed a duty to Plaintiff and was negligent in their review of the title abstract and in failing to notify her of all title defects. (Id.) Plaintiff seeks $90,000 in damages for the total cost of the property, plus closing costs, plus the costs of improvements made to the property. (Id. at 10.)

Defendant filed a notice of removal with this Court on April 24, 2025, asserting that this Court has original jurisdiction over the matter pursuant to 28 U.S.C. § 1332 and § 1441. (Doc. No. 1 at 2.) Defendant's notice of removal asserts that diversity jurisdiction exists because Defendant is a Florida business corporation that maintains its principal place of business in Connecticut, and Plaintiff is a citizen of Pennsylvania. CATIC then filed a motion to dismiss for failure to state a claim. (Doc. No. 4.) Plaintiff filed a motion to remand, asserting that this Court lacks subject matter jurisdiction because under § 1332(c)(1)(A), there is a lack of diverse citizenship. (Doc. No. 11 at 1.) The motions have been fully briefed and are ripe for disposition.

## II.     LEGAL STANDARDS

### A.     Motion To Remand

Removal by a defendant is appropriate in "any civil action brought in a state court of which the district courts of the United States have Original jurisdiction." See 28 U.S.C. § 1441(a). "The propriety of removal thus depends on whether the case originally could have been filed in federal court." City of Chicago v. Int'l Coll. of Surgeons, 552 U.S. 156, 163 (1997). A removed action must be remanded "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." See 28 U.S.C. § 1447(c). Moreover, § 1441 is to

be strictly construed against removal.  See Boyer v. Snap-On Tools Corp., 913 F. 2d 108, 111 (3d Cir. 1990).  Accordingly, all doubts must be resolved in favor of remand.  See id.

When removal is based on diversity of citizenship, the removing party must be able to demonstrate complete diversity of citizenship between parties and that the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332.  To establish complete diversity, "no plaintiff can be a citizen of the same state as any of the defendants."  See Johnson v. Smithline Beecham Corp., 724 F.3d 337, 346 (3d Cir. 2013).  However, "[i]n a suit with named defendants who are not of diverse citizenship from the plaintiff, the diverse defendant may still remove the action if it can establish that the non-diverse defendants were 'fraudulently' named or joined solely to defeat diversity jurisdiction."  See In Re Briscoe, 448 F. 3d 201, 216 (3d Cir. 2006).  Importantly, "the person asserting jurisdiction bears the burden of showing that the case is properly before the court at all stages of the litigation."  See Packard v. Provident Nat. Bank, 994 F. 2d 1039, 1045 (3d Cir. 1993).

For purposes of diversity jurisdiction, in a direct action against an insurer, the insurer has not only its normal citizenship, but also that of its insured.  See 28 U.S.C. § 1332(c)(1)(A). 28 U.S.C §1332(c)(1)(A) provides that:

> A corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business, except that in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of—
> (A) every State and foreign state of which the insured is a citizen; . . . .

See 28 U.S.C §1332(c)(1)(A).

A "direct action" under § 1332(c)(1) does not exist unless the cause of action against the insurance company is of such a nature that the liability sought to be imposed

4

could be imposed against the insured. See Myers v. State Farm Insurance Co., 842 F.2d 705, 707 (3d Cir. 1988) (quoting Fortson v. St. Paul Fire and Marine Insurance Co., 751 F.2d 1157, 1159 (11th Cir. 1985)).

**B.      Motion to Dismiss**

Federal notice and pleading rules require the complaint to provide the defendant notice of the claim and the grounds upon which it rests. See Phillips v. County of Allegheny, 515 F. 3d 224, 232 (3d Cir. 2008). The plaintiff must present facts that, accepted as true, demonstrate a plausible right to relief. See Fed. R. Civ. P. 8(a). Although Federal Rule of Civil Procedure 8(a)(2) requires "only a short and plain statement of the claim showing that the pleader is entitled to relief," a complaint may nevertheless be dismissed under Federal Rule of Civil Procedure 12(b)(6) for its "failure to state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6).

When ruling on a motion to dismiss under 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). Under Twombly and Iqbal, pleading requirements have shifted to a "more heightened form of pleading." See Fowler v. UMPC Shadyside, 578 F 3d. 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. See id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court has instructed in Iqbal, "where the well-pleaded facts do not permit the court to infer more than mere possibility

misconduct, the complaint has alleged–, but it has not 'show[n]'– 'that the pleader is entitled to relief.'"  See Iqbal, 556 U.S. at 679 (alteration in original) (quoting Fed. R. Civ. P 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under Twombly and Iqbal, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago v. Warminster Twp., 629 F. 3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1947, 1950).

### III.  DISCUSSION

The Court first addresses Plaintiff's motion to remand before addressing Defendant's motion to dismiss.

#### A.  Motion to Remand

Defendant has removed this action to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1332.  (Doc. No. 1 at 2.)  Plaintiff asserts in her complaint that she is a citizen of the Commonwealth of Pennsylvania, and that Defendant is a Florida business corporation with its principal place of business at 101 Corporate Place, Rocky Hill, CT 06067.  (Doc. No. 1-1 at 4.)

However, Plaintiff has moved to remand, arguing that Defendant failed to establish complete diversity of citizenship.  (Doc. No. 11 at 3.)  Plaintiff relies on 28 U.S.C. § 1332(c)(1)(A), contending that under this provision, her citizenship should be imputed to Defendant—her insurer.  (Id.)  Plaintiff maintains that because she has brought a "direct action"

6

against her insurer and is not joined as a third-party defendant, § 1332(c)(1)(A) applies and destroys diversity jurisdiction. (Doc. No. 11 at 3–6.)

In response, Defendant argues that the exception under § 1332(c)(1)(A) does not apply for two reasons. (Doc. No. 12 at 2–4.) First, Defendant contends that the policy at issue is an indemnity policy, not a liability policy. (Id.) Second, Defendant asserts that the exception does not apply when an insurance holder sues her own insurer. (Id.)

The Court finds Plaintiff's reliance on § 1332(c) misplaced, as Third Circuit precedent and legislative history clearly show that it does not eliminate diversity jurisdiction when an insured sues her own insurer. Section 1332(c) operates to strip diversity jurisdiction from certain types of cases. Subsection (c)(1) begins by establishing that a corporation is a citizen of both the state in which it is incorporated and the state where it has its principal place of business. See 28 U.S.C. §1332(c)(1)(A). It then sets forth an exception to this general rule, stating that in "any direct action against the insurer of a policy or contract of liability insurance. . . to which action the insured is not joined as a third-party defendant," the insurer is also deemed to be a citizen of the state of the insured. See id.

Although § 1332(c)(1) does not define "direct action," the Third Circuit has clarified that a "direct action" exists only when the cause of action against the insurer is such that liability could be imposed on the insured. See Myers, 842 F.2d at 707 (quoting Fortson, 751 F.2d at 1159). In Myers, the Third Circuit specifically held that when an insured brings suit against her own insurer, no direct action exists because the insurer is not acting as "a payor of a judgment based on the negligence of one of its insureds." See id. (quoting Velez v. Crown Life Ins. Co., 599 F.2d 471, 473 (1st Cir. 1979)).

Legislative history further supports this interpretation. In 1964, Congress amended § 1332 to eliminate diversity jurisdiction over "suits on certain tort claims in which both parties are local residents, but which, under a State 'direct action' statute, may be brought directly against a foreign insurance carrier without joining the local tort-feasor as a defendant." See S. Rep. No. 1308, 88th Cong., 2d Sess. (1964). This amendment was a direct response to direct-action statutes that existed only in Louisiana and Wisconsin. See id.

More recently, the Third Circuit, in a non-precedential opinion, affirmed a District of New Jersey decision finding diversity jurisdiction in a case in which an insured sued her title insurance company. See Granelli v. Chicago Title Ins. Co., 569 F. App'x. 125, 128 (3d Cir. 2014) (unpublished). In Granelli, homeowners sued Chicago Title for breach of contract, alleging that the company failed to uncover title defects and did not act promptly to cure them. See id. at 127. The Third Circuit noted that the district court properly exercised diversity jurisdiction pursuant to 28 U.S.C. § 1332. See id. at 128.

Therefore, under Third Circuit precedent and the relevant legislative history, imputation of the insured's citizenship to the insurer under § 1332(c)(1) applies only when a third-party injured person sues the insurer, rather than the insured directly or through joinder. Here, Plaintiff is the insured and has filed suit against her own insurance company, not as a third-party injured person. Accordingly, § 1332(c)(1) does not apply, and Plaintiff's citizenship is not imputed to Defendant.

However, the burden remains on the Defendant to demonstrate that complete diversity of citizenship between the parties exists and that the amount in controversy exceeds $75,000. If the complaint does not set forth facts sufficient to meet this burden, then Defendant must do so in the notice of removal. See Wells Fargo Bank Nat'l Ass'n As Tr. For Holders of Merrill Lynch

Mortg. Invs. Tr. Mortg. Loan-Asset-Backed Certificate series 2006-WMCL v. Dey-El, 788 F. App'x 857, 860 (3d Cir. 2019) (unpublished).  Here, Defendant points to facts present in the complaint, which meet the burden to demonstrate that Plaintiff is a citizen of the Commonwealth of Pennsylvania and Defendant is a Florida business corporation with its principal place of business in Connecticut.  Defendant also correctly alleges that the amount in controversy exceeds $75,000 exclusive of interest and costs.  Accordingly, Defendant has met its burden to establish complete diversity jurisdiction.  As such, the Court will deny Plaintiff's motion to remand.

**B.    Motion to Dismiss**

As noted above, CATIC seeks dismissal of all three state law claims asserted in the complaint: (1) Breach of Contract, (2) Unjust Enrichment, (3) Negligence.  (Doc. No. 4.)  Defendant argues that Plaintiff's complaint fails to state a claim upon which relief can be granted as to each claim.  (Doc. No. 5 at 1.)

As noted supra, the Third Circuit has instructed district courts to follow three analytical steps when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief."  See Santiago, 629 F. 3d at 130 (quoting Iqbal, 129 S. Ct. at 1947, 1950).

Before beginning its analysis, this Court must first determine which state's law applies to the claims.  District courts sitting in diversity jurisdiction must apply the substantive law of their forum state.  See Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938)).

The Third Circuit has held that in diversity cases such as this one, the court must look to the choice-of-law rules of the forum state—the state in which the district court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause. See Collins On behalf of herself v. Mary Kay, Inc., 874 F.3d 176, 183 (3d Cir. 2017) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941), which held that a federal court sitting in diversity must apply the choice-of-law rules of the forum state).

Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them. See Kruzits, 40 F.3d at 55 (citing Smith v. Commonwealth Nat. Bank, 557 A.2d 775, 777 (Pa. Super. Ct. 1989), appeal denied, 569 A.2d 1369 (Pa. 1990)).

Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws, which provides that:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
> > (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
> > (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue. . . .

See Restatement (Second) of Conflict of Laws § 187 (1971); see, e.g., Schifano v. Schifano, 471 A.2d 839, 843 n.5 (Pa. Super Ct. 1984) (citing with approval the Restatement (Second) Conflict of Laws).

In the instant case, the title insurance policy between Plaintiff and Defendant contains a choice of law clause. (Doc. No. 1-1 at 23.) This choice of law clause provides that the state law of the state where the land is located, or to the extent it controls, federal law, applies to this policy. (Id.) The land which the title policy insures is located in Pennsylvania. (Id. at 23.) The chosen forum by Messersmith was the Court of Common Pleas of York County, Pennsylvania. Defendant is a citizen of Florida and Connecticut but has not raised any choice of law arguments.

Thus, because: the insured land at issue is located in Pennsylvania; the contract entered into between the parties selects Pennsylvania; there is no identified state with a greater interest; and Pennsylvania has a substantial relationship to the parties and transaction because the land insured is located in Pennsylvania—Pennsylvania's substantive law applies to Plaintiff's claims. The Court will now address, in turn, each of Plaintiff's claims, which the defendant seeks to dismiss, applying Pennsylvania substantive law.

### 1. Breach of Contract

To state a claim for breach of contract under Pennsylvania law, a plaintiff must establish: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. See Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003). "Contemporary contract law generally provides that a contract is enforceable when the parties reach mutual agreement, exchange consideration, and have outlined the terms of their bargain with sufficient clarity." SodexoMAGIC, LLC v. Drexel Univ., 24 F.4th 183, 220 (3d Cir. 2022) (citing Stephan v. Waldron Elec. Heating & Cooling LLC, 100 A.3d 660, 665 (Pa. Super. Ct. 2014)).

Plaintiff has alleged facts that, accepted as true, demonstrate that a contract existed between the parties. The title insurance policy, which details the covered risks and exceptions

that Defendant CATIC agreed to insure Plaintiff against in exchange for the $920.59 premium paid by Plaintiff, sufficiently outlines the boundaries of the parties' agreement. (Doc. No. 1-1.) Therefore, Plaintiff plausibly alleges that a contract existed between the parties.

The second element of a breach of contract claim is a breach of a duty imposed by that contract. See Ware, 322 F.3d at 225. Plaintiff argues that Defendant breached its contractual duty to insure Plaintiff against the covered risks of the title insurance policy. (Doc. No. 1-1 at 8–9.) Plaintiff attaches the title insurance policy to her complaint. (Id. at 17–29.) On page 3 of the policy, it provides:

> OUR DUTY TO DEFEND AGAINST LEGAL ACTIONS
> We will defend Your Title in any legal action, only as to that portion of the legal action for a matter that is based on a Covered Risk and that is not excepted or excluded from coverage in this policy. We will pay the costs, attorneys' fees, and expenses we incur in that defense.
> We will not pay for any portion of the legal fees for a matter that is not based on a covered risk or that is excepted or excluded from coverage in this policy.

(Doc. No. 1-1 at 19.)

The policy enumerates 33 covered risks. (Id. at 17–19.) Plaintiff contends that her situation—in which her residence is located on her neighbor's property—falls under Covered Risk 31. (Id. at 7.) Accordingly, Plaintiff alleges that CATIC breached its contractual duty by denying her claim.

Covered Risk 31 states: "The residence with the property address shown in Schedule A is not located on the land at the date of the policy." (Id. at 19.) Schedule A lists the property address as 332 Old York Road, New Cumberland, PA 17070, and defines "Land" by the legal description attached as Exhibit A. (Id. at 25.) Schedule B outlines exceptions to coverage, including Exception 1: "Any variation in location of lines or dimensions or other matters which an accurate survey would disclose." (Id. at 26.)

Upon careful consideration of the complaint, and, accepting the alleged facts as true and disregarding Plaintiff's conclusory allegations, the Court concludes that the complaint fails to plausibly allege that Defendant breached a contractual duty owed to Plaintiff. Plaintiff contends that because muniments of title indicate her home was located on the Seaks Property, her claim falls within Risk 31. (Doc. No. 9 at 3.) The muniment of title she relies upon is a 1977 deed conveying two tracts of land to Douglas D. Hicks and Charlene R. Hicks. (Id.) Those tracts are now known as the Messersmith Property and the Seaks Property. (Id.) The deed reflects that the two properties were under common ownership and records that a house was situated on the Seaks Property. (Id.) However, this merely establishes the existence of two muniments of title—one describing the tract Plaintiff purchased, which is covered by her title insurance policy, and another describing the Seaks Property, which contains the house.

As to the exception contained in the title policy, Plaintiff argues only that the exception should not be read so as to render the Covered Risk 31 useless. (Id.) However, the Court finds Plaintiff's argument unavailing. Exception 1 excludes "[a]ny variation in location of lines or dimensions <u>or other matters which any accurate survey would disclose</u>." (Doc. No. 1-1 at 26 (emphasis added).) Had Plaintiff obtained a survey, and that survey nevertheless failed to reveal the location of the house on the Seaks Property, then Covered Risk 31 might have provided coverage. (Id.) However, it is clear that Exception 1 is designed to discourage homebuyers from neglecting their due diligence when purchasing property—such as foregoing a survey or other measures to validate the purchase—simply because they have obtained a title insurance policy. By closing on the property without obtaining a survey and signing a title insurance policy containing this exception, Plaintiff assumed the risk of "[a]ny variation in location of lines or dimensions or other matters which any accurate survey would disclose." Plaintiff's complaint

reveals that no survey was conducted prior to purchasing the property. (Doc. No. 1-1 at 5–7.) A subsequent survey—initiated after concerns arose—confirmed that the residence is located on the Seaks Property. (Id.) Accordingly, based on the allegations of Plaintiff's complaint, an accurate survey would have revealed the variation had it been conducted before closing. Pursuant to the terms of the policy, Plaintiff's claim falls within the scope of the stated exception and is therefore not a covered risk under the title insurance policy. Plaintiff's well-pleaded factual allegations do not plausibly give rise to an entitlement to relief under a breach of contract claim, as the asserted claim is not a covered risk under the title insurance policy. Accordingly, the Court will grant Defendant's motion to dismiss the breach of contract claim.

### 2.     Unjust Enrichment

As a threshold matter, the elements necessary to establish unjust enrichment are: (1) benefits conferred on the defendant by the plaintiff; (2) appreciation of those benefits by the defendant; and (3) acceptance and retention of such benefits under circumstances that would make it inequitable for the defendant to retain them without payment of value. See Schenck v. K.E. David, Ltd., 666 A.2d 327, 328 (Pa. Super Ct. 1995).

Where unjust enrichment is found, the law implies a contract requiring the defendant to compensate the plaintiff for the value of the benefit conferred. See id. at 328. However, the Pennsylvania Supreme Court has left no doubt that "unjust enrichment is inapplicable when the relationship between parties is founded upon a written agreement or express contract, regardless of how 'harsh the provisions of such contracts may seem in the light of subsequent happenings.'" See SodexoMAGIC, LLC, 24 F.4th at 228 (citing Wilson Area Sch. Dist. v. Skepton, 895 A.2d 1250, 1254 (Pa. 2006) (quoting Third Nat'l Bank & Tr. Co. of Scranton v. Lehigh Valley Coal Co., 44 A.2d 571, 574 (Pa. 1945))).

Accordingly, because the complaint alleges facts establishing the existence of a contract between the parties, Plaintiff's well-pleaded factual allegations in the complaint do not plausibly give rise to an entitlement to relief under an unjust enrichment claim. Accordingly, the Court will grant Defendant's motion to dismiss the unjust enrichment claim.

### 3. Negligence

In order to establish a claim for negligence, a plaintiff must prove the following elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) a causal relationship between the breach and the resulting injury suffered by the plaintiff; and (4) actual loss suffered by the plaintiff. See Sharpe v. St. Luke's Hospital, 821 A.2d 1215, 1218 (Pa. 2003).

However, under Pennsylvania law, the gist of the action doctrine prevents a purely contractual duty from serving as the basis for a tort claim. See SodexoMAGIC, LLC, 24 F.4th at 216 (citing Bruno v. Erie Ins. Co., 106 A.3d 48, 65 (Pa. 2014)). This doctrine requires that when a duty is created by contract, a claim for a breach of that duty must be brought in contract, not tort. See Bruno, 106 A.3d at 68 ("[if] the duty breached is one created by the parties by the terms of their contract . . . then the claim is to be viewed as one for breach of contract").

Therefore, Plaintiff's well-pleaded factual allegations in the Complaint do not plausibly give rise to an entitlement to relief under a negligence claim, because Plaintiff's negligence claim is barred by the gist of the action doctrine. Accordingly, the Court will grant Defendant's motion to dismiss the negligence claim.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion to remand this case to the York County Court of Common Pleas, but will grant Defendant's motion to dismiss

Plaintiff's complaint, and direct the Clerk of Court to close the case. An appropriate Order follows.

s/ Yvette Kane<br>
Yvette Kane, District Judge<br>
United States District Court<br>
Middle District of Pennsylvania